UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
INITIATIVE AND REFERENDUM         )
INSTITUTE et al.,                 )
                                  )
      Plaintiffs,                 )
                                  )
      v.                          )    Civil Action No. 00-1246 (RWR)
                                  )
UNITED STATES POSTAL SERVICE,     )
                                  )
      Defendant.                  )
_____ )
```

## MEMORANDUM OPINION

Plaintiffs challenge the constitutionality of an amended United States Postal Service ("USPS") regulation that prohibits collecting signatures for petitions, polls or surveys on certain USPS sidewalks, arguing that the restriction is overbroad because the regulation applies to a substantial number of postal sidewalks that are public forums. The parties conducted a survey of postal facilities in an attempt to quantify the extent of expressive activity on USPS sidewalks and have filed renewed cross-motions for summary judgment. Because material facts are not in dispute, the regulation no longer applies to exterior USPS sidewalks that are indistinguishable from public sidewalks, and the plaintiffs have not shown that the interior sidewalks to which the regulation still applies are public forums or that the regulation is unreasonable or void for vagueness, the defendant's motion will be granted and the plaintiffs' motion will be denied.

BACKGROUND

The background of this case is set out in <u>Initiative &</u>
<u>Referendum Inst. v. U.S. Postal Serv.</u>, 116 F. Supp. 2d 65 (D.D.C.
2000) ("<u>IRI I</u>"), <u>Initiative & Referendum Inst. v. U.S. Postal</u>
<u>Serv.</u>, 297 F. Supp. 2d 143 (D.D.C. 2003) ("<u>IRI II</u>"), and
<u>Initiative & Referendum Inst. v. U.S. Postal Serv.</u>, 417 F.3d 1299
(D.C. Cir. 2005) ("<u>IRI III</u>").  Briefly, USPS regulations restrict
certain conduct on postal property.  The relevant regulation had
stated at the time this action was brought:

> Soliciting alms and contributions, campaigning for
> election to any public office, collecting private
> debts, soliciting and vending for commercial purposes
> (including, but not limited to, the vending of
> newspapers and other publications), displaying or
> distributing commercial advertising, <u>soliciting</u>
> <u>signatures on petitions, polls, or surveys (except as</u>
> <u>otherwise authorized by Postal Service regulations)</u>,
> and impeding ingress to or egress from post offices
> are prohibited.

39 C.F.R. § 232.1(h)(1) (2002) (emphasis added).  The underlined
language, added in 1998, gave rise to this suit in which the
plaintiffs challenge the regulation's application to exterior
postal property.  <u>See</u> <u>IRI I</u>, 116 F. Supp. 2d at 67-68.  After
summary judgment was granted in favor of USPS on the grounds that
the regulation was content neutral, promoted a significant
governmental interest, and left open ample alternative channels
of communication, <u>IRI II</u>, 297 F. Supp. 2d at 147, the plaintiffs
appealed.  On appeal, the D.C. Circuit concluded that USPS' ban
on soliciting signatures could not be upheld as a time, place, or

manner restriction if applied to a public forum.  IRI III, 417

F.3d at 1312.  The court of appeals further concluded that a

facial challenge did not require proof that all exterior postal

properties constitute public forums.  Rather, the regulation

would be overbroad "if a substantial number of external postal

properties constitute public forums."  Id. at 1313.  The court of

appeals opined that it "seem[ed] likely that many urban post

offices do [have Grace[1] sidewalks], and that the regulation's

restraint on protected speech is thus substantial[.]"  Id. at

1314.  The court of appeals remanded the case for a determination

of "whether the Postal Service's regulation 'abridges protected

speech . . . in a good number of cases.'"  Id. (alteration in

original) (quoting Ruggiero v. FCC, 317 F.3d 239, 248 (D.C. Cir.

2003) (Randolph, J., concurring)).

Following the court of appeals' decision, USPS amended

§ 232.1(h)(1) and it now states:

        Soliciting alms and contributions, campaigning for
        election to any public office, collecting private
        debts, soliciting and vending for commercial purposes

---

[1] In United States v. Grace, 461 U.S. 171, 179-80 (1983),
the Supreme Court held that sidewalks on the outer boundaries of
government property that were indistinguishable from public
sidewalks did not lose their status as public forums merely
because they abutted property dedicated for uses other than free
speech.  These types of sidewalks are referred to as Grace
sidewalks.  They are distinct from interior sidewalks on postal
properties that are physically distinguishable from public
sidewalks, which the Supreme Court analyzed in United States v.
Kokinda, 497 U.S. 720 (1990).  These types of sidewalks are
referred to as Kokinda sidewalks.

(including, but not limited to, the vending of
newspapers and other publications), displaying or
distributing commercial advertising, <u>collecting</u>
signatures on petitions, polls, or surveys (except as
otherwise authorized by Postal Service regulations),
are prohibited.

39 C.F.R. § 232.1(h)(1) (2010) (emphasis added).  USPS also

modified § 232.1 such that it no longer applies to "sidewalks

along the street frontage of postal property falling within the

property lines of the Postal Service that are not physically

distinguishable from adjacent municipal or other public

sidewalks, and any paved areas adjacent to such sidewalks that

are not physically distinguishable from such sidewalks."  39

C.F.R. § 232.1(a)(ii) (2010).

Also after the remand, the parties conducted a survey of

selected postal properties to determine the type and extent of

expressive activity that takes place on various postal sidewalks.

They sent questionnaires to the facility manager at each retail

post office in twelve postal Districts,[2] constituting 4,513 of

the 32,621 retail postal facilities nationwide that existed at

the time of the survey.  (Def.'s Stmt. ¶¶ 22-23.)  Seventy-nine

---

[2] "The specific Districts were chosen to provide retail
offices that would be reflective of urban, suburban and rural
locales, office size and a geographic spread throughout the
contiguous United States."  (Def.'s Mem. of P. & A. in Supp. of
Def.'s Renewed Mot. for Summ. J., Decl. of Gregory M. Whiteman
¶ 3.)  The parties sent surveys to the following districts:
Greater South Carolina, Columbus, Philadelphia Metro, Greater
Michigan, Central New Jersey, Connecticut, San Francisco,
Atlanta, Central Florida, Rio Grande, Colorado/Wyoming, and
Spokane.  (<u>Id.</u> ¶ 4.)

percent of these surveyed postal facilities responded, yielding
3,566 completed questionnaires. (Def.'s Mem. of P. & A. in Supp.
of Def.'s Renewed Mot. for Summ. J. ("Def.'s Mem."), Decl. of
Gregory M. Whiteman ¶ 12.) Although the "Districts selected are
representative of postal Districts nationwide[,]" they "were not
chosen on a statistical basis and therefore the survey was not
designed to be a valid statistical representation of postal
Districts nationwide." (Def.'s Stmt. ¶ 23.) The survey divided
postal sidewalks into four categories:

> A. Sidewalks at the border of the postal property
>    that are continuations of and/or indistinguishable
>    from adjacent municipal or public sidewalks. . . .
> B. Sidewalks within, but not at the border of, postal
>    property that run along any side of the post
>    office building. . . .
> C. Sidewalks that provide ingress/egress to the post
>    office, *i.e.* pathways from the street or parking
>    lot to the front door. . . .
> D. Other

(Def.'s Mem., Ex. B., Postmaster Questionnaire ¶¶ 3, 10.) For
each type of sidewalk, the survey asked about the type and
frequency of expressive activity.[3] The survey instructed the
facility manager to report not only on the manager's current
facility, but on all facilities that the manager had managed in

---

[3] Expressive activities included soliciting signatures,
leafleting, picketing, protesting, public gathering, and
displaying signs. (Def.'s Mem., Ex. B., Postmaster Questionnaire
¶¶ 5, 12.) Frequencies included never, less than once per year,
one to two times per year, three to six times per year,
approximately monthly, and several times per month, in addition
to "[d]on't know/[u]nsure[.]" (Id. ¶¶ 6, 13.)

the past.  (Id. § 2.)  There were 6,053 facilities in the final

data set.  (Pls.' Mem. of P. & A. in Supp. of Pls.' Renewed Mot.

for Summ. J. ("Pls.' Mem."), Decl. of Joseph B. Kadane ¶ 3.)  As

to the ultimate number of sidewalks on which expressive activity

took place, the plaintiffs assert that there are 518 records

showing responsive activity (id. ¶ 4(e)), and USPS asserts that

there are 562 sidewalks "where expressive activity was

indicated[.]"[4]  (See Def.'s Mem., Decl. of Gregory M. Whiteman

¶ 15.)

     The plaintiffs have moved for summary judgment, arguing that

the amended § 232.1(h)(1) is facially unconstitutional because a

substantial number of Kokinda[5] sidewalks are public forums, the

regulation is not reasonable even if the Kokinda sidewalks are

nonpublic forums, and the regulation is void for vagueness.[6]  The

plaintiffs also seek to enjoin USPS from applying the regulation

to Grace sidewalks.  USPS has also moved for summary judgment,

_____

     [4] The difference is not material to the analysis.

     [5] See n.1, supra.

     [6] The plaintiffs' motion does not renew their challenge to
the regulation as applied to the twelve exemplary post offices
identified in the complaint.  The plaintiffs' supporting
memorandum refers to those post offices only for the purpose of
supporting the plaintiffs' argument that the regulation at issue
is facially unconstitutional.  Cf. Handy v. Shaw, Bransford,
Veilleux & Roth, Civil Action No. 00-2336 (CKK), 2006 WL 3791387,
at *6 n.6 (D.D.C. Dec. 22, 2006) (considering argument raised in
previous motion for summary judgment that defendants "explicitly
incorporate[d] by reference" in their renewed motion for summary
judgment).

arguing that the non-<u>Grace</u> sidewalks are not public forums, and that the amended § 232.1(h)(1) is valid because it is reasonable.

<u>DISCUSSION</u>

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); <u>see also</u> <u>Moore v. Hartman</u>, 571 F.3d 62, 66 (D.C. Cir. 2009). A party seeking summary judgment must provide the district court with a factual record sufficient to demonstrate the absence of a genuine issue of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The moving party may support its motion successfully if it "'inform[s] the district court of the basis for its motion, and identif[ies] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Frito-Lay, Inc. v. Willoughby</u>, 863 F.2d 1029, 1032 (D.C. Cir. 1988) (quoting <u>Celotex Corp.</u>, 477 U.S. at 323) (internal citation omitted).

Ordinarily, a litigant has standing to vindicate only his own constitutional rights. See <u>Members of City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 796 (1984). However, a plaintiff can seek to invalidate all enforcement of a law that abridges speech protected by the First Amendment -- such

that it cannot be applied to the plaintiff or to others -- by "showing that [the] law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep[.]'" <u>Virginia v. Hicks</u>, 539 U.S. 113, 118 (2003) (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973)). <u>Cf</u>. <u>New York v. Ferber</u>, 458 U.S. 747, 773 (1982) (concluding that statute with a "tiny fraction" of "arguably impermissible applications" was not overbroad). Facial invalidation is "strong medicine" and should be applied "only as a last resort." <u>Broadrick</u>, 413 U.S. at 613.

I.    FORUM ANALYSIS

Because "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities[,]" the Supreme Court has "adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." <u>Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.</u>, 473 U.S. 788, 799-800 (1985). There are three types of forums: traditional public forums, public forums created by government designation, and nonpublic forums. <u>Marlin v. D.C. Bd. of Elections and Ethics</u>,

- 9 -

236 F.3d 716, 718 (D.C. Cir. 2001) (citing <u>Cornelius</u>, 473 U.S. at 802). A forum is considered public "if it historically has been devoted to the free exchange of views; streets and parks are quintessential examples. Even if a forum was not traditionally open, the government may designate it a public forum by making it generally available for expressive use by the general public or by a particular class of speakers[.]"[7] <u>Bryant v. Gates</u>, 532 F.3d 888, 895 (D.C. Cir. 2008) (internal quotation marks and citations omitted). "In determining the extent to which the public may be guaranteed access to a particular location on government property, 'the nature of the forum and the conflicting interests involved' remain important considerations." <u>IRI I</u>, 116 F. Supp. 2d at 70 (quoting <u>Lehman v. City of Shaker Heights</u>, 418 U.S. 298, 302 (1974)). A sidewalk is generally presumed to be a public forum because, like streets and parks, it has historically been a setting for free speech. <u>See</u> <u>Henderson v. Lujan</u>, 964 F.2d 1179, 1182 (D.C. Cir. 1992).

---

[7] <u>IRI III</u> did not disturb the holdings of <u>IRI I</u>, 116 F. Supp. 2d at 75, that "[e]ven if USPS designated exterior post office property as a public forum in which citizens were permitted to gather signatures for initiatives, USPS is permitted to close that designated public forum to such a use in the future, so long as the closure is not content-based[,]" and that the regulation would pass muster with respect to a designated public forum because it is "content-neutral[.]"

A. Grace sidewalks

When categorizing a sidewalk that bears "apparent similarity to ones of the classic variety[,]" the government bears the burden of overcoming the presumption that the walkways are public forums by showing that they are "overwhelmingly specialized."[8] Id. In United States v. Grace, 461 U.S. 171, 180 (1983), the Supreme Court concluded that the walkways on the Supreme Court building grounds were a public forum because there was "no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." However, that the public may move freely through a particular area does not necessarily mean that the property is a public forum. See Greer v. Spock, 424 U.S. 828, 836-38 (1976) (recognizing that the property at issue was intended to facilitate the business of a military installation in training soldiers and not to provide a public forum for speech).

Regulations may restrict the time, place, and manner of expressive activity in a public forum only if such regulations are content-neutral, narrowly tailored to serve a significant

---

[8] The plaintiffs assert that this presumption applies to all sidewalks. (See Pls.' Mem. of P. & A. in Opp'n to Def.'s Renewed Mot. for Summ. J. at 2-3.) However, the government bears the burden of showing that sidewalks are not public forums only for sidewalks of the "classic variety," Henderson, 964 F.2d at 1182, which Kokinda sidewalks are not, since they are physically distinguishable from public sidewalks. See infra I(B)(1).

governmental interest, and leave open ample alternative channels for communication.  Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).  The D.C. Circuit held that the version of § 232.1(h)(1) then in effect unconstitutionally infringed First Amendment rights when applied to public forums because the regulation was not narrowly tailored to achieving the government's legitimate interests in minimizing disruption to postal business and providing unimpeded ingress and egress to post offices for customers and its employees.  IRI III, 417 F.3d at 1307.  Although the court of appeals remanded the case for a determination of whether the regulation abridged a substantial amount of protected speech -- which would render it unconstitutionally overbroad -- because it applied to Grace sidewalks, the court of appeals anticipated that USPS could moot the issue by amending the regulation to exclude those sidewalks. Id. at 1318 (stating that the question of whether "the regulation is facially invalid . . . may be pretermitted if the Postal Service amends the regulation to exclude [Grace] sidewalks from the prohibition").

USPS has made this very modification.  The regulation no longer prohibits signature gathering on postal property consisting of Grace sidewalks.  See 39 C.F.R. § 232.1(a)(ii) (2010).  Citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982), the plaintiffs argue that, even in light of this

modification, "[i]n the absence of an injunction from this Court,
the government remains free to amend its regulation at a later
date to ban signature gathering . . . on *Grace* sidewalks."
(Pls.' Mem. at 5.)  USPS claims that the modification to the
regulation renders the challenge moot with respect to <u>Grace</u>
sidewalks.  (Def.'s Mem. of P. & A. in Opp'n to Pls.' Cross-Mot.
for Summ. J. at 2-8.)

"'Federal courts lack jurisdiction to decide moot cases
because their constitutional authority extends only to actual
cases or controversies.'" <u>Matthews v. District of Columbia</u>, 675
F. Supp. 2d 180, 187 (D.D.C. 2009) (quoting <u>Larsen v. U.S. Navy</u>,
525 F.3d 1, 4 (D.C. Cir. 2008)).  A case becomes moot if it is
"'impossible for the court to grant any effectual relief whatever
to the prevailing party'" because "'there is no reasonable
expectation that the wrong will be repeated[.]'" <u>United States
v. Philip Morris USA Inc.</u>, 566 F.3d 1095, 1135 (D.C. Cir. 2009)
(quoting <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287 (2000)).
However, voluntary cessation of wrongful conduct does not moot a
case.  <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 632 (1953).
A challenge to legislation is mooted upon the law's repeal unless
there is "evidence indicating that the challenged law likely will
be reenacted." <u>Nat'l Black Police Ass'n v. District of Columbia</u>,
108 F.3d 346, 349 (D.C. Cir. 1997).  In <u>Aladdin's Castle</u>, 455
U.S. at 288, the Supreme Court considered whether a city

ordinance was unconstitutionally vague.  Before the court ruled
on the issue, the city repealed the ordinance and claimed that
the issue was moot.  The court held that the city's repeal of the
ordinance did not moot the issue because the city announced an
intention to reenact the provision if the district court judgment
holding the ordinance unconstitutionally vague were vacated.  <u>Id.</u>
at 289 n.11.

Here, unlike in <u>Aladdin's Castle</u>, the plaintiffs have not
produced any evidence that USPS intends to re-amend the
regulation at the termination of this litigation to again
prohibit signature gathering on <u>Grace</u> sidewalks.  USPS' changed
position during this litigation as to whether the unamended
regulation applied to <u>Grace</u> sidewalks (<u>see</u> Pls.' Mem. at 6 n.2)
is not probative of any future intent to restore the previous
language.  The plaintiffs merely speculate that USPS could amend
the provision at a later date, but such speculation is not
sufficient to warrant the injunctive relief that they seek.
<u>See</u> <u>Nat'l Black Police Ass'n</u>, 108 F.3d at 349-50 (concluding that
appeal was moot after finding no "evidence in the record" of
government's intent to repeal new legislation that rendered
plaintiff's legal challenge to old legislation unnecessary).
Plaintiffs' challenge regarding <u>Grace</u> sidewalks, then, is moot.

B.    Kokinda sidewalks

    1.    Overbreadth

The plaintiffs further argue that there are a substantial number of Kokinda sidewalks that also constitute public forums, rendering the regulation facially invalid even if it does not apply to Grace sidewalks. (Pls.' Mem. at 6.) The Supreme Court conducted a forum analysis regarding a non-Grace postal sidewalk in United States v. Kokinda, 497 U.S. 720 (1990) (plurality opinion). Kokinda involved a sidewalk outside a post office that led "only from the parking area to the front door of the post office." Id. at 727. The plurality opinion in Kokinda, joined by four Justices, held that the post office sidewalk did "not have the characteristics of public sidewalks traditionally open to expressive activity." Id. Stating that "the location and purpose of a publicly owned sidewalk is critical" in determining whether it is a public forum, id. at 728-29, the plurality held that the post office sidewalk was not a public forum because it was "constructed solely to provide for the passage of individuals engaged in postal business." Id. at 727. Specifically, the sidewalk existed "solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." Id. at 727-28 (contrasting the sidewalk at issue with the "municipal sidewalk that runs parallel to the

road in this case [and] is a public passageway"). However, "the split nature of the decision in *Kokinda* provides no definitive guidance on the forum status" of non-<u>Grace</u> postal sidewalks. <u>IRI III</u>, 417 F.3d at 1313 (internal quotation marks omitted).

Other courts also have analyzed the forum status of walkways at specific post office properties by considering their physical characteristics and their purposes. <u>See, e.g.</u>, <u>Jacobsen v. U.S. Postal Serv.</u>, 993 F.2d 649, 656 (9th Cir. 1993) (relying on <u>Kokinda</u>'s plurality to conclude that "federal sidewalks obviously separate from the municipal sidewalk and devoted to postal customers are nonpublic" forums). In <u>Longo v. U.S. Postal Serv.</u>, 983 F.2d 9, 10-11 (2d Cir. 1992), the Second Circuit addressed a challenge to § 232.1(h)(1)'s prohibition against campaigning on postal property. <u>Longo</u> relied on <u>Kokinda</u>'s plurality opinion and concluded that an "interior postal walkway . . . which was constructed solely for the purpose of assisting patrons of the post office to get from the parking lot to the front door of the post office" was a nonpublic forum. <u>Id.</u> at 11. <u>Monterey County Democratic Central Comm. v. U.S. Postal Serv.</u>, 812 F.2d 1194, 1197 (9th Cir. 1987), found a walkway that was "separated from the municipal sidewalks by the Post Office parking area" to be a nonpublic forum because the walkway "services postal patrons entering the building" and "is not a thoroughfare for passersby intent on other errands." <u>United States v. Bjerke</u>, 796 F.2d 643,

648 (3d Cir. 1986), evaluated the forum status of postal walkways
which were separated from the street by a parking lot and an
exterior walkway.  The court concluded that the areas near the
entrances were not public forums because they "were not dedicated
to serve the traditional functions of streets or parks, but
rather for the particular function of accommodating post office
patrons on official business . . . and not to provide a public
platform for political advocacy."  Id. at 649.

The most complete analyses of the forum status of postal
sidewalks have not merely considered the character and purpose of
the sidewalk in question, but also have evaluated the extent to
which expressive activity historically has taken place on the
property.  These cases suggest that a specialized sidewalk
intended to facilitate postal business could be a public forum
if, historically, it had been the site for a sufficiently large
amount of expressive activity.  See, e.g., Kokinda, 497 U.S. 737
(Kennedy, J., concurring) (stating that "there remains a powerful
argument that, because of the wide range of activities that the
Government permits to take place on this postal sidewalk, it is
more than a nonpublic forum"); see also Henderson, 964 F.2d at
1182 (noting that while the government's dedication of "property
to a use inconsistent with public assembly and debate . . .
precludes [its] classification as a public forum[,]" the
government cannot establish such inconsistency merely by

declaring and enforcing restrictions on speech on a property that has historically been a site for expressive activity).  In <u>Del Gallo v. Parent</u>, 557 F.3d 58, 71-72 (1st Cir. 2009), the First Circuit considered whether a postal sidewalk that was separated from the municipal sidewalk by a parking lot on one side and a grass-covered area on another side constituted a public forum. The court noted that the fact that the postal sidewalk touched the municipal sidewalk was not enough to conclude that the two walkways were indistinguishable because the two properties were "clearly separate[.]"  <u>Id.</u> at 71.  <u>Del Gallo</u> concluded that the walkway was a nonpublic forum because it "provide[d] customers access to the entry" to the post office and there was no evidence of past usage as a gathering place to promote "the free exchange of ideas."  <u>Id.</u> at 71-72.  <u>United States v. Belsky</u>, 799 F.2d 1485, 1489 (11th Cir. 1986) also evaluated both the character of the sidewalk and whether there was a history of expressive activity on the sidewalk.  The court found that, unlike the public sidewalks surrounding the building, "the ingress and egress walkways to the post office buildings are a nonpublic forum" because they "are intended to accommodate traffic to and from the post office for the conduct of postal business and have not traditionally been sites for expressive conduct."  <u>Id.</u>

Here, the regulation at issue no longer applies to "sidewalks along the street frontage of postal property falling

- 18 -

within the property lines of the Postal Service that are not physically distinguishable from adjacent municipal or other public sidewalks[.]" 39 C.F.R. § 232.1(a)(ii) (2010). Thus, the sidewalks to which the regulation still applies -- which are by definition physically distinct from "classical variety" sidewalks -- are not subject to the presumption that they are public forums. Cf. Henderson, 964 F.2d at 1182. USPS relies on the declaration of Frederick J. Hintenach, Manager of USPS's Customer Services Operations, Delivery and Retail Department, who is responsible for USPS standard operating policies and procedures, to establish that postal sidewalks have a specialized purpose. (Def.'s Renewed Mot. for Summ. J., Docket #67, Ex. A ¶ 3, Ex. B ¶¶ 1, 3.) Hintenach states that parking lots, driveways, and postal owned walkways are intended to provide access to the post office for people conducting postal business.[9] (Id., Ex. B ¶ 12.)

At a minimum, therefore, a successful facial challenge to the amended regulation requires the plaintiffs to demonstrate that a substantial number of these sidewalks are public forums by pointing to their past usage as gathering places to promote "the

---

[9] The plaintiffs do not refute USPS' claim that postal sidewalks are intended to facilitate postal business. They instead merely dispute the legal implication of this fact. (See Pls.' Mem. of P. & A. in Opp'n to Def.'s Renewed Mot. for Summ. J. at 4 ("At the heart of the government's argument is an assumption that a sidewalk dedicated to some purpose cannot also be a public forum. But this Circuit's decisions . . . have explicitly rejected that argument.").)

free exchange of ideas." <u>See</u> <u>Del Gallo</u>, 557 F.3d at 71-72; <u>IRI</u>
<u>III</u>, 417 F.3d at 1314 (remanding for a determination of whether
the regulation abridges a substantial amount of speech and thus
is overbroad).  USPS relies on the affidavit of Gregory Whiteman,
Manager of Marketing Research, who states that while the "survey
was not designed to be a statistically valid representation of
activities on postal premises on a nationwide basis" and the data
cannot be tested statistically, the results are "useful."
(Def.'s Mem., Decl. of Gregory M. Whiteman ¶¶ 6, 24.)  Because
the surveyed post offices do not provide a statistically valid
sample of post offices nationwide, it is impossible to
extrapolate from the data conclusions about the frequency of
expressive activity on the entire population of <u>Kokinda</u> postal
sidewalks.[10]

However, even if it were possible to draw statistically
valid conclusions from the parties' survey, the data do not allow
for any meaningful conclusion to be made about the historical
regularity of expressive activity on <u>Kokinda</u> sidewalks.  The
survey asked postal managers about expressive activity on the
sidewalks of the postal office that they currently manage and on

_____

[10] It is also impossible to draw any statistically valid
conclusions from the twelve exemplary post offices, which are not
representative of post offices nationwide.  (<u>See</u> Pls.' Mem. at 15
(acknowledging that "the 'subject post offices' were selected
precisely because plaintiffs and others had previously used their
sidewalks for petitioning activities").)

the sidewalks of each postal office that they had previously
managed. (Def.'s Mem., Ex. B., Postmaster Questionnaire.)
Although the survey asked for the dates that the managers served
at each postal facility, the managers did not provide the dates
on which expressive activity occurred, nor do the parties'
experts draw conclusions about the dates on which reported
expressive activity took place. These omissions prevent a
determination that any of the various properties has been a site
of expressive activity of sufficient historical regularity to be
considered a public forum. See Del Gallo, 557 F.3d at 72
(rejecting plaintiff's argument that isolated examples of
political election campaigning on Kokinda sidewalk allowed it to
be considered a public forum). Although the plaintiffs argue
that the survey reveals that there has been a decrease in
expressive activity on postal sidewalks since the regulation's
promulgation and implementation in 2000 (Pls.' Mem. at 10-11
("[O]f the 1,623 postal managers who responded to this question,
18.1% reported observing at least some decline in expressive
activity on postal sidewalks in that period, and 12.2% reported
observing a 'significant' decline.")), the survey asked about
postal property sidewalks generally. Thus, the plaintiffs cannot
rule out the possibility that any decline in expressive activity

took place largely -- or even solely -- on <u>Grace</u> sidewalks.[11]

Moreover, the plaintiffs' expert did not conclude that there was

a causal relationship between implementing the regulation and the

decrease in expressive activity.  He merely concluded that "a

substantial number of postal managers reported that they observed

a decline in the amount of expressive activity on their sidewalks

since 2000[.]"[12]  (Pls.' Mem., Decl. of Joseph B. Kadane ¶ 4(e).)

Finally, the plaintiffs argue that "from a statistical

standpoint, the *Kokinda* sidewalks in question were in fact

indistinguishable from *Grace* sidewalks within the scope of the

---

[11] With respect to the exemplary post offices, most of the
evidence the plaintiffs cite similarly fails to distinguish
between expressive activity that took place on <u>Grace</u> sidewalks
and expressive activity that took place on <u>Kokinda</u> sidewalks.
(<u>See, e.g.</u>, Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Summ
J., Docket #65, Ex. 34, Freeman Dewayne Lents Dep. at 31:4-9
("Just a couple of weeks ago, we did have somebody that was
soliciting signatures . . . on the sidewalk[.]"); Ex. 35, Carol
Bechtel Dep. at 52:18-19 ("They were on the sidewalk in front of
the post office.").)  The one deposition the plaintiffs cite that
does distinguish between <u>Grace</u> and <u>Kokinda</u> sidewalks refers to
expressive activity that took place on a <u>Grace</u> sidewalk, which is
not relevant to determining the historical regularity of
expressive activity on <u>Kokinda</u> sidewalks.  (<u>See id.</u>, Ex. 36,
William C. Farrell Dep. at 23:21-22 ("Q: And where did you tell
them to go?  A: To relocate to the south <u>public</u> sidewalk[.]"
(emphasis added)).)

[12] Even if the plaintiffs' assertion that "enforcement of
the regulation has resulted in an observed reduction in
expressive activity" (Pls.' Mem. at 10) is correct, the data do
not reveal a baseline for comparison.  Without knowing the
historical frequency of expressive activity, the significance of
the reduction cannot be determined.

survey."[13]  (Id. at 11-12 (emphasis omitted).)  Even if the survey

results allowed for the conclusion that there is no statistically

significant difference between the observed frequency of

expressive activity on Grace and Kokinda sidewalks -- which the

results do not allow for since the samples are not necessarily

representative of the population of postal sidewalks -- this

argument would confuse the relevant inquiry.  The plaintiffs

point to no authority for the proposition that if the frequency

of expressive activity on a particular type of property is

comparable to the frequency of expressive activity on a public

forum, the property in question must also be a public forum.

Rather, the frequency of expressive activity on Grace sidewalks

is immaterial to their status as public forums because they are

---

[13] The plaintiffs draw this conclusion from the following
data concerning expressive activity observed on various postal
sidewalks:

| Observed Frequency | Sidewalk A (*Grace* sidewalks) | Sidewalk B (Interior "feeder" sidewalks) | Sidewalk C (Interior sidewalks running alongside the postal building[)] |
|---|---|---|---|
| Several times a month | 1.4% | 1.1% | 1.3% |
| About monthly | 4.7% | 5.9% | 2.6% |
| Three to six times a year | 8.9% | 5.9% | 9.5% |

(Pls.' Mem. at 12.)

physically indistinguishable from classical variety sidewalks.
See Henderson, 964 F.2d at 1182. Moreover, comparing the
frequency of expressive activity within the recent past on the
two types of sidewalks sheds little, if any, light on the forum
status of Kokinda sidewalks, since the relevant inquiry concerns
whether individuals have used those sidewalks historically for
expressive activity.[14] See, e.g., Del Gallo, 557 F.3d at 71-72.
The plaintiffs have not demonstrated through their facial
challenge that there are significant numbers of Kokinda sidewalks
that have served historically as sites for a significant amount
of expressive activity. Therefore, in light of the specialized
physical characteristics and purpose of these sidewalks, the
plaintiffs have not shown that a substantial number of Kokinda
sidewalks are public forums. Accordingly, they have not met the
steep burden required to show that the regulation is overbroad
and should be declared facially invalid.

---

[14] While the plaintiffs point to other anecdotal evidence in
the record to argue that "[p]ost office sidewalks have long
served as a principal public forum for all kinds of expressive
activities" (Pls.' Mem. at 7-10), none of this evidence
distinguishes between Grace and Kokinda sidewalks. Because the
plaintiffs cannot demonstrate with reasonable certainty that
individuals have not confined their expressive activities on
postal properties exclusively or even largely to Grace sidewalks,
this evidence is insufficient to demonstrate that Kokinda
sidewalks are public forums.

2.  Reasonableness

The plaintiffs argue on remand that the amended regulation is unreasonable because it permits the solicitation but prohibits the collection of signatures on postal property, and because 39 C.F.R. § 232.1(e), a separate provision of the regulation, prohibits disruptive activity that would interfere with postal customers entering or leaving the property. (Pls.' Mem. at 29-30.) "[T]he state may reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry Educ. Ass'n, 460 U.S. at 46. "The reasonableness of the Government's restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all surrounding circumstances." Cornelius, 473 U.S. at 809. "A regulation is reasonable 'when it is consistent with the [government's] legitimate interest in preserv[ing] the property . . . for the use to which it is lawfully dedicated.'" IRI I, 116 F. Supp. 2d at 73 (quoting Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 688 (1992) (O'Connor, J., concurring) (alterations in original)). The unamended regulation at issue here previously was found to be reasonable, such that it "would withstand the minimal level of scrutiny applicable to regulations in a nonpublic forum[,]" since it was

"consistent with USPS's need to preserve post office property for post office business." Id. at 75.

The court of appeals held that the unamended regulation's apparent ban on "pure solicitation -- in the sense of *asking* postal patrons to sign petitions -- even if the signatures themselves are to be collected off postal premises" was unreasonable but that construing the regulation not to prohibit "communications that promote the signing of petitions, polls, and surveys somewhere other than on Postal Service premises" would "cure the problem[.]" IRI III, 417 F.3d at 1314-17. USPS formalized this limiting construction -- designed by the court of appeals for the very purpose of saving the regulation from unreasonableness -- in the amended regulation, which now prohibits "collecting signatures" but not soliciting signatures. 39 C.F.R. § 232.1(h)(1) (2010). The amended regulation's shift from regulating soliciting signatures to regulating collecting signatures therefore saves the regulation from remaining unreasonable.

Moreover, § 232.1(e) does not render the signature collecting prohibition in § 232.1(h)(1) unreasonable. It is reasonable for USPS to adopt a regulation that attempts to prevent disruption before it occurs. See IRI I, 116 F. Supp. 2d at 75 (stating that "USPS need not show actual disruption" and may instead "show merely the reasonable expectation of

disruption" to restrict access to a nonpublic forum).  Section 232.1(e) prohibits disruptive behavior on postal property, but it is not a perfect substitute for § 232.1(h)(1), which provides a mechanism for limiting disruption before it occurs.

Additionally, because USPS is regulating speech in a nonpublic forum, it does not have to demonstrate that the regulation is narrowly tailored to the government interest it seeks to achieve.  Lee, 505 U.S. at 683 (noting that the reasonableness of a restriction on speech in a nonpublic forum is not assessed in relation to other possible restrictions, as "'it need not be the most reasonable or the only reasonable limitation'" (quoting Kokinda, 497 U.S. at 730 (plurality opinion))).  That removing a disruptive individual from postal property might be a more narrowly tailored means of achieving the government interest in preventing disruptions on postal property has no bearing on whether the prohibition on signature collecting on postal property is a reasonable regulation of speech in nonpublic forums.  With regard to Kokinda sidewalks, the plaintiffs have provided no basis for disturbing the previous conclusion that "§ 232.1(h)(1) is a reasonable effort by the government to manage its property in pursuit of its business." IRI I, 116 F. Supp. 2d at 75.

II.  VAGUENESS

    The plaintiffs argue that the amended regulation's language limiting its application to <u>Kokinda</u> sidewalks is vague in three respects: 1) "it provides no substance to the phrase 'physically distinguishable,' leaving it entirely to the discretion of the enforcing official[,]" 2) "it is unclear what sidewalks qualify as 'along the frontage[,]'" and 3) it is unclear whether the exception "can encompass any non-perimeter sidewalks[.]" (Pls.' Mem. at 31.)  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972).  A lack of precision in defining prohibited conduct would give enforcing officials "an impermissibly wide discretionary range in which to determine who is in violation."  <u>Cmty. for Creative Non-Violence v. Turner</u>, 893 F.2d 1387, 1395 (D.C. Cir. 1990).  As a result, a vague statute that seeks to regulate activity protected by the First Amendment may unnecessarily chill the exercise of those activities.  <u>Gooding v. Wilson</u>, 405 U.S. 518, 521 (noting that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression" and that the social value of constitutionally protected expression justifies allowing plaintiffs to challenge these statutes for vagueness

even if they cannot demonstrate that the statute at issue regulates their own conduct). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 794 (1989).

Here, the language about which the plaintiffs complain is not unconstitutionally vague when considered in the context of the regulation's entire provision. It may be that the precise meanings of the phrases "physically distinguishable," "along the street frontage," and "adjacent to such sidewalks," in isolation, are not apparent. However, these provisions are part of an actual sentence, and each of these three phrases serves to inform and provide context for the others: § 232.1(h)(1) does not apply to "sidewalks along the street frontage of postal property falling within the property lines of the Postal Service that are not physically distinguishable from adjacent municipal or other public sidewalks, and any paved areas adjacent to such sidewalks that are not physically distinguishable from such sidewalks." 39 C.F.R. § 232.1(a)(ii) (2010). The plaintiffs argue that a crack, seam, or change in color in a <u>Grace</u> sidewalk could provide a basis for an enforcing official to not apply the exclusion to that sidewalk. But such minor physical anomalies are common to sidewalks generally and cannot alone serve to distinguish a <u>Grace</u> sidewalk from its "adjacent municipal [sidewalks] or other

public sidewalks[.]" Id. By contrast, interior postal sidewalks and postal sidewalks perpendicular to adjacent municipal sidewalks, for example, are physically distinguishable from both adjacent municipal sidewalks and other public sidewalks because of their position relative to the perimeter of postal property. Moreover, the phrase "paved area" cannot provide a basis for an enforcing official to apply the exclusion to a Kokinda sidewalk that runs perpendicular to a perimeter sidewalk, as the plaintiffs argue, because the exclusion applies to sidewalks "along" the frontage, not perpendicular to it. The regulation therefore is not unconstitutionally vague when read in context. See Grayned, 408 U.S. at 112 (noting that the statute, "written specifically for [a particular] context" was not unconstitutionally vague because it gave fair notice of the prohibited activities in that context).

CONCLUSION

The plaintiffs have not shown a need to enjoin USPS from re-amending the regulation to apply to Grace sidewalks. Nor have the plaintiffs carried their burden to show that the amended regulation is overbroad, as they have not demonstrated that a substantial number of Kokinda sidewalks are public forums. Because no material facts are in dispute and the regulation is reasonable and not void for vagueness, the defendant's motion [142] for summary judgment will be granted, and the plaintiff's

motion [143] for summary judgment will be denied.  An appropriate

Order accompanies this Memorandum Opinion.

SIGNED this 8th day of September, 2010.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge